# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MEDHAT YOUSSEF, | ) | CASE NO.   1:15-cv-02150 |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| MICHELE MILLER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Medhat Youssef (hereinafter "Petitioner" or "Youssef"), challenges the constitutionality of his conviction in the cases of *State v. Youssef*, Cuyahoga County Court of Common Pleas Case Nos. CR-13-580132 and CR-13-580239.   Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 16, 2015. (R. 1). On January 15, 2016, Warden Michele Miller ("Respondent") filed her Answer/Return of Writ. (R. 6).[1]  Petitioner filed a traverse on November 28, 2016. (R. 19).   On December 1, 2016, Petitioner also filed a letter with the Court. (R. 21). On February 21, 2017, Petitioner filed "Notices to the Court." (R. 23).   On June 23, 2017, Petitioner filed another letter with the Court. (R. 25).

---

[1] Previously, the Court had provisionally appointed counsel from the Federal Public Defender's office "for the limited purpose of evaluating the viability of the merits of Youssef's claims…" (R. 9, PageID# 960). Ultimately, the Court determined that appointment of counsel was not warranted. (R. 18, PageID# 980).

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.   For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

## I.   Summary of Facts

Factual determinations made by state courts are presumed correct in a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.")   The Eighth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> {¶ 2} In November 2013, Youssef was charged in Case No. CR-13-580239 with three counts of rape and three counts of kidnapping. In December 2013, he was charged in Case No. CR–580132 with three counts of felonious assault and three counts of domestic violence. Each of these offenses were committed against his wife, M.M., except for Count 3 in Case No. CR–580132, which was committed against a family friend, Y.M. The cases were joined for trial, at which the following evidence was adduced.

> {¶ 3} At the time of trial M.M. was 25 years old and had been married for eight years to Youssef, who is approximately 20 years older than M.M. They first met in Egypt through an arranged marriage when she was approximately 17 years old. Youssef is a cousin of M.M.'s mother. M.M. lived in Egypt while Youssef worked abroad for two years. M.M. and Youssef had two children while they were in Egypt.

> {¶ 4} The family traveled to the United States in December 2011. They moved into a house on Denison Avenue in Cleveland. M.M. testified that Youssef raped her sometime before Christmas of December 2011, while she was asleep. Youssef flipped her onto her back and pulled off her pajama pants. M.M. told him that she "didn't want to, she was tired," but he grabbed her hands, held them above her head, and slapped her face. She could not move because of Youssef's size. He then vaginally raped her. M.M. repeatedly told him that she did not want to have sex. Youssef grabbed her head and banged it against the wall.

> {¶ 5} M.M. testified that she never told anyone what happened because she was afraid of Youssef. She did not have any family in the Cleveland area, spoke little English, and cared for the children while Youssef worked and took care of all the

finances. She once tried to run away with their daughter, but Youssef grabbed their son and told her that if she does not come back, he will kill their son.

{¶ 6} In January 2012, the family moved into a house on West 135th Street. M.M. testified that around October 9, 2013, she was asleep in her bedroom when Youssef woke her up, wanting to have sex with her. He vaginally raped her while holding down her arms and face. M.M. told Youssef that she did not want to sleep with him, and the doctor told her that she should not sleep with him for seven days because she had a vaginal infection that caused her to bleed. This had been a recurring problem for her since she came to the United States in December 2011. It was painful for her to have sex, which she explained to Youssef. M.M. received treatment from Dr. Kenneth Edelman, M.D. ("Dr.Edelman"), an OB-GYN with MetroHealth Hospital. In October 2012, Dr. Edelman first treated M.M. for pain and irregular bleeding. He observed a lesion and obtained a culture and blood work. Based on his observations, he suspected Type 2 Herpes. M.M.'s culture was negative for Type 2 Herpes, but her blood tested positive for Type 1 Herpes.

{¶ 7} M.M. testified that she could no longer take how Youssef treated her, so she decided to tell her friends from church about how Youssef treated her. She then filed a report with the police on October 15, 2013. A family friend, Y.M., accompanied M.M. to the police station to help translate. The Cleveland police officer who took the report asked Y.M. the questions. He would then ask them to M.M. Y.M. would respond, and he would relay M.M.'s answers to the officer. Afterwards, M.M. told Youssef that she made the report.

{¶ 8} On November 5, 2013, M.M. moved out of the West 135th Street home and into a home on Bosworth Avenue with her two children. She did not give Youssef this address because she feared him. At that time, she was working as a dishwasher. On November 11, 2013, M .M. agreed to drive Youssef to the hospital because he complained of a toothache. Before taking him to the hospital, she ensured that her children boarded their school bus in the morning. M.M. testified that she was scared to transport Youssef, but she did because he was family and he was sick. When they arrived at the hospital, Youssef was not able to be seen that day, so M.M. drove him home.

{¶ 9} M.M. then went back to her home on Bosworth Avenue so Y.M. could help install a bidet in her bathroom. M.M. testified that she and Y.M. are friends. They are not romantically involved, and Y.M. is engaged. M.M. prepared food for her children in the kitchen while Y.M. installed the bidet. She had a pot of boiling water on the stove. Shortly thereafter, Youssef called M.M. He told her that he was outside and asked her to open the door for him. She let him inside, thinking that he came over to help Y.M. install the bidet. They went into the kitchen and Youssef told M.M. that she needed his permission before allowing anyone into her home. M.M. replied that, "this is my house, not your house." Youssef then punched M.M. in the eye, grabbed the pot of boiling water, threw it on her arms and face, and hit

3

her in the face with a plate, causing her top lip to split open and cuts on her arm. He also punched M.M. in the face and on her arms and legs. At one point, Youssef grabbed a knife and told M.M. that he was going to kill her then kill himself.

{¶ 10} Y.M. attempted to stop Youssef. Youssef punched Y.M. in the eye and hit him with a pot. Y.M. then called the police. The police arrived at the scene and called an ambulance for M.M., who was then transported to the hospital where she received medical treatment for her injuries. M.M. suffered first and second degree burns to her face and arms as well as lacerations to her lip and arm.

{¶ 11} Youssef did not testify in his own defense and did not call any witnesses. During closing arguments, defense counsel stated that it was his decision to not have Youssef testify.

*State v. Youssef,* 2015 WL 929816, 2015-Ohio-766 at ¶¶ 2-11 (Ohio Ct. App. Mar. 5, 2015)

(footnotes omitted), *appeal not allowed*, 2015-Ohio-3733, 143 Ohio St. 3d 1465, 37 N.E.3d 1250 (Ohio 2015) .

## II.   Procedural History

### A.   Conviction

During its September 2013 term, a Cuyahoga County Grand Jury charged Petitioner with three counts of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(2) and three counts of kidnapping in violation of O.R.C. 2907.01(A)(4). (R. 6-1, PageID# 105-107, Exh. 1). In a second indictment, Petitioner was also charged with three counts of felonious assault in violation of O.R.C. § 2903.11(A)(1) & (2), and one count of domestic violence in violation of O.R.C. § 2919.25(A). (R. 6-1, PageID# 109-110, Exh. 3).   Petitioner pleaded not guilty to both sets of charges. (R. 6-1, PageID# 108, 111, Exhs. 2 & 4).   The cases were consolidated for trial. (R. 7-1, PageID# 378-379, Tr. 34-35).

After a jury trial, Petitioner was found guilty of one count of felonious assault, one count of domestic violence, two counts of rape, and two counts of kidnapping. (R. 6-1, PageID# 112-115, Exhs. 5 & 6).   He was found not guilty of two additional counts of felonious assault. (R. 6-1,

PageID# 112-113, Exh. 5).   At the conclusion of its case, the State dismissed one count of rape and kidnapping. (R. 7-2, PageID# 821, Tr. 475).   The trial court found the felonious assault and domestic violence convictions constituted allied offenses of similar import and merged them for purposes of sentencing; the State elected to proceed with sentencing for felonious assault. (R. 6-1, PageID# 112-113, Exh. 5).   Petitioner was sentenced to two years imprisonment for felonious assault, to run concurrently with his sentences for rape and kidnapping. (*Id*.)   The trial court also determined that each rape conviction was an allied offence to the corresponding kidnapping conviction and merged them for purposes of sentencing. (R. 6-1, PageID# 114-115, Exh. 6).   The State elected to have Petitioner sentenced for the rape convictions. (*Id*.)   The trial court sentence Petitioner to five years imprisonment for each rape conviction, the sentences to run concurrently with one another and with the felonious assault conviction resulting in an aggregate sentence of five years. (*Id*.)   The court imposed five years of mandatory post-release control and classified Petitioner as a Tier III sex offender. (*Id*.)

**B.    Direct Appeal**

On May 8, 2014, Petitioner, through new counsel, filed a Notice of Appeal with the state appellate court. (R. 6-1, PageID# 116, Exh. 7).   Petitioner raised the following assignments of error:

1. Appellant was denied a fair trial by numerous improper statements and insinuations by the State concerning his ethnicity and religion, which individually and cumulatively constituted prosecutorial misconduct.

2. The trial court erred by admitting unauthenticated medical records into evidence.

3. Appellant was materially prejudiced by misrepresentations by the State concerning whether he had transmitted venereal disease(s) to the victim, as well as by misrepresentations by the State concerning the victim's medical records.   These repeated misrepresentations were made to the court in

arguing the admissibility of medical records in demonstrative exhibits, and in closing argument.

4.      The trial court erred by not appointing a certified interpreter(s) as required by the Ohio Rules or Superintendence.

5.      Appellant was denied a fair trial by ineffective assistance of counsel.

(R. 6-1, PageID# 129-162, Exh. 8).

On March 5, 2015, the state appellate court affirmed the judgment of the trial court. (R. 6-1, PageID# 224-247, Exh. 11).

On April 17, 2015, Petitioner, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. (R. 6-1, PageID# 248-249, Exh. 12).   Petitioner raised largely the same propositions of law as raised before the state appellate court:

1.      Appellant was denied a fair trial by numerous and improper statements/insinuations by the prosecution concerning his culture, ethnicity, and religion; which individually and cumulatively constituted prosecutorial misconduct; violating Appellant's due process and equal protection of the laws pursuant to Ohio Const. Art. I, Sect. 10, United States Constitutional Amendments 5, 14.

2.      Trial erred to the prejudice of the Appellant by allowing unauthenticated medical records into evidence in violation of Ohio Rule of Evidence 803(6); Ohio Const. Art. I, Sect. 10; United States Const. Amend[s]. 5, 14.

3.      Appellant was materially prejudiced by misrepresentations by the state concerning whether he had transmitted venereal disease(s) to the victim, as well as by misrepresentations by the state concerning the victims [sic] medical records. These repeated misrepresentations were made to the court in arguing the admissibility of medical records, in demonstrative exhibits, and in closing argument. Violating Appellant's Ohio Const. Art. I, Sect. 10; United States Const. Amend[s]. 5, 14.

4.      The trial court did not ensure compliance with its own orders assigning an interpreter to the Appellant by failing to use an Ohio Supreme Court certified interpreter. In Violation of Sup. R. 88(D); Ohio Const. Art. I, Sect. 10; United States Const. Amend[s]. 5, 14.

5.      Appellant was denied a fair trial by the ineffective assistance of trial

counsel in violation of his Sixth Amendment rights protected by the US
Constitution.

(R. 6-1, PageID# 273-294, Exh. 13).

On September 16, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the

appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 6-1, PageID# 320, Exh. 15).

**C. Federal Habeas Petition**

On October 16, 2015, Petitioner filed a Petition for Writ of Habeas Corpus and asserted the

following grounds for relief: [2]

> GROUND ONE: Appellant was denied a fair trial by numerous and improper
> statements/insinuations by the prosecution concerning his culture, ethnicity, and
> religion; which individually and cumulatively constituted prosecutorial
> misconduct; violating Appellant's due process and equal protection of
> the laws pursuant to Ohio Const. Art. I, Sect. 10, United States Constitutional
> Amendments 5, 14.

> GROUND TWO: Trial court erred to the prejudice of the Appellant by allowing
> unauthenticated medical records into evidence in violation of Ohio Rule of
> Evidence 803(6); Ohio Const. Art. I, Sect. 10; United States Const. Amend[s]. 5,
> 14.

> GROUND THREE: Appellant was materially prejudiced by misrepresentations
> by the State concerning whether he had transmitted venereal disease(s) to the
> victim, as well as by misrepresentations by the State concerning the victims
> medical records.   These repeated misrepresentations were made to the court in
> arguing the admissibility of medical records, in demonstrative exhibits, and in
> closing argument. Violating Appellant's Ohio Const. Art. I, Sect. 10; United States
> Const. Amend[s]. 5, 14.

> GROUND FOUR: The trial court did not ensure compliance with its own orders
> assigning an interpreter to the Appellant by failing to use an Ohio Supreme Court
> certified interpreter.   In violation of Sup. R. 88(D); Ohio Const. Art. I, Sect. 10;
> United States Const. Amend[s]. 5, 14.

---

2  The grounds for relief are quoted verbatim.

GROUND FIVE: Appellant was denied a fair trial by the ineffective assistance of trial counsel in violation of his Sixth Amendment rights protected by the US Constitution.

(R. 1, PageID# 6-12).

### III.   Exhaustion and Procedural Default

**A.   Exhaustion Standard**

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c).   This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot:   "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

**B.      Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).   A claim may become procedurally defaulted in two ways. *Id*.   First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate

state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6ᵗʰ Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  The Antiterrorism and Effective Death Penalty Act's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle,* 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh, 240 F.Supp.2d 708 (N.D. Ohio 2002).*

his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).   Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).   A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), abrogated on other grounds as recognized in *English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. See *Maupin*, 785 F.2d at 138-39.   "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." Id.   Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).   Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually

innocent, in order to prevent a "manifest injustice." *See Coleman, 501 U.S. at 749-50*.

Conclusory statements are not enough. A petitioner must "support his allegations of

constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

*Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807

(N.D. Ohio 2007) (Katz, J.)

**C.      Analysis**

Respondent argues that Petitioner has procedurally defaulted his third and fourth grounds

for relief, as well as most of his first ground for relief. (R. 6, PageID# 72-79). Petitioner's

traverse does not address Respondent's contention that several of the grounds are defaulted. (R.

19).

### 1.    Contemporaneous Objection Rule and Plain Error

Respondent asserts that the Petitioner's third and fourth grounds for relief, as well as most

of his first ground for relief, are defaulted because Petitioner failed to object at trial. (R. 6, PageID#

72-79). It is well-established in the State of Ohio that a petitioner, such as Youssef, waives an

alleged error when he fails to make a contemporaneous objection at trial. *See e.g.*, *Condon v.

Wolfe*, 310 Fed. App'x 807, 813 (6th Cir. 2009) (*citing State v. Brown*, 528 N.E.2d 523, 534 (Ohio

1988) ("Error that is not specifically objected to at trial is waived.")) Moreover, the Sixth Circuit

has explicitly held that "Ohio's contemporaneous objection rule constitutes an adequate and

independent state ground that bars federal habeas review absent a showing of cause and

prejudice." *Condon*, 310 Fed. App'x at 813 (*quoting Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.

2001)); *see also White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d

604, 635 (6th Cir. 2003).

In grounds one and three, Petitioner alleges prosecutorial misconduct stemming from ethnic, cultural and religious reference concerning Petitioner and the victim, as well as misrepresentations by the prosecutor as to whether the medical records showed the victim had a venereal disease.[4] (R. 1, PageID# 6-12).   The state appellate court indeed found that Petitioner failed to object to the bulk of alleged instances of prosecutorial misconduct and thereby "waiv[ed] all but plain error." *Youssef,* 2015-Ohio-766 at ¶15.

Turning to ground four, Petitioner has argued that the trial court violated state rules requiring the use of an interpreter certified by the Supreme Court of Ohio.[5]  (R. 1, PageID# 6-12). In addressing this argument, the state appellate court quoted Ohio Sup. R. 88(D), "which governs the appointment of and certification of requirement for foreign language interpreters," and noted as follows:

> {¶ 39} M.M. and Youssef were each in need of interpreters. At trial, the state advised the trial court that "[t]here is only one Ohio Supreme Court certified Arabic translator in the state of Ohio.   That person lives in Cincinnati, so in this case it would not be reasonably practical to only use a Supreme Court certified translator because we need two translators[.]"   Furthermore, Youssef stipulated that there was no certified available translators and the trial court "went above and beyond to find a suitable translator." Therefore, the court had no option but to use either a "provisionally qualified foreign language interpreter" or a "language-skilled foreign language interpreter" as provided in Sup .R. 88(D)(1) and (2).

> {¶ 40} In the instant case, it appears the trial court used "language skilled" interpreters.   As stated above, Sup.R. 88(D)(3) provides that when using a language skilled interpreter, the court "shall summarize on the record its efforts to obtain a Supreme Court certified foreign language interpreter or provisionally qualified foreign language interpreter and the reasons for using a language-skilled foreign language interpreter."   Furthermore, "[t]he language-skilled foreign language interpreter's experience, knowledge, and training should be stated on the

---

[4]  Grounds one and three correspond to the first and third assignments of error raised before the state appellate court. (R. 1, PageID# 6-12; R. 6-1, PageID# 129-162, Exh. 8).

[5]  Ground four corresponds to the fourth assignment of error raised before the state appellate court. (R. 1, PageID# 6-12; R. 6-1, PageID# 129-162, Exh. 8).

record," and "[e]ach language-skilled foreign language interpreter shall take an oath or affirmation under which the interpreter affirms to know, understand, and act according to the code of professional conduct for court interpreters * * * as set forth in Appendix H to [Sup.R. 88]."

{¶ 41} As a result of Youssef's stipulation to the fact that there was no available Supreme Court certified translator, "we apply a plain-error standard, which requires a determination that the outcome of the trial clearly would have been different absent the error." *State v. Noor,* 10th Dist. Franklin No. 13AP-165, 2014-Ohio-3397, ¶ 72, *citing State v. McDowall,* 10th Dist. Franklin No. 09AP–443, 2009-Ohio-6902; *State v. Flores,* 12th Dist. Warren No. CA2014-03-037, 2014-Ohio-5751. Under this standard, we do not find the outcome of the trial would have been different.

{¶ 42} A review of the record reveals that both the state and Youssef stipulated to the qualifications of the interpreters used by Youssef. Under oath, the court inquired into the knowledge and training of the interpreters. The court inquired, under oath, into these interpreters knowledge and training. The trial court also inquired, under oath, into the qualifications of the interpreters used by M.M. The first interpreter had interpreted in approximately 12 other cases. Defense counsel objected to the use of this interpreter, but the trial court overruled the objection. This interpreter then began interpreting for M.M. After obtaining the basic information of M.M.'s name, age, and Youssef's name, the court called a sidebar and the matter was adjourned for the day. The next morning, the trial court obtained a different interpreter and inquired into this interpreter's qualifications. Defense counsel again objected to the use of this interpreter, but the trial court overruled the objection.

{¶ 43} While defense counsel objected to the interpreters used by M.M., it is clear from the record that the court asked each interpreter for his or her qualifications and instructed the interpreters to interpret the testimony word for word to the best extent possible. Although there were some irregularities in the use of the translators, there is nothing in the record to suggest any improprieties in the translation that affected the outcome of the trial. Moreover, Youssef did not claim any specific instances where the interpreters' translation was improper. *See State v. Wang,* 9th Dist. Medina No. 13CA0027-M, 2015-Ohio-439 (where the Ninth District Court of Appeals ordered a new trial for the defendant when the defendant and the victim's friend alerted the trial court to the discrepancies between what the victim said and how the interpreter interpreted the victim's testimony. *Id*. at ¶ 11, 17. The court recognized "that verbatim interpretation is 'desirable, but not essential,' under the facts of this case, [the defendant] presented a compelling argument that the misinterpretation made a difference to his defense that he was venting his frustration rather than throwing items at the victim to inflict injury." *Id*. at ¶12, *citing State v. Patel,* 9th Dist. Summit No. 24024, 2008-Ohio-4692).

{¶ 44} Accordingly, we find that the trial court did not err in appointing an interpreter not certified by the Ohio Supreme Court.

*Youssef*, 2015-Ohio-766 at ¶15.

Here, because Petitioner, or more accurately his counsel, did not object to the complained of instances of alleged prosecutorial misconduct, the state appellate court conducted only a plain error analysis.[6]   The same holds true for the challenge to the interpreter, as the state court found that Petitioner had stipulated that there was no available certified translator, and that plain-error review was appropriate.   Accordingly, the first three elements of the *Maupin* test are satisfied as Petitioner (1) did not comply with the contemporaneous objection rule; (2) the state appellate court actually enforced the rule by applying a plain error analysis, and (3) the Sixth Circuit has recognized that said rule constitutes an "independent and adequate" state ground on which the state can foreclose federal review.[7]   As such, grounds one, three and four are procedurally defaulted, save for the one instance where Petitioner actually objected.   In addition, it is highly questionable whether Petitioner's argument in ground four—that he did not have the aid of a certified interpreter in contravention of Ohio rules—presents a cognizable habeas claim.   It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); *accord Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984).   As ground four is based on a perceived error in the application of

---

[6]   The state appellate court noted that Petitioner did object in one instance, and addressed the merits of that claim.  *Youssef,* 2015-Ohio-766 at ¶¶22-24.   That claim will be addressed below in the "review on the Merits" section.

[7]   "By employing plain error review, the Ohio Court of Appeals acknowledged the presence of a procedural bar." *Condon,* 310 Fed. App'x at 814; *see also Hinkle,* 271 F.3d at 245 ("[We] view a state appellate court's review for plain error as the enforcement of a procedural default.")

Ohio Sup. R. 88(D), it fails to present cognizable habeas claims.[8]

To the extent the above grounds for relief do present cognizable claims, Petitioner has not set forth any cause or ensuing prejudice that would excuse his procedural default with respect to any of the above identified grounds for relief.   Indeed, he has presented no argument why he was unable to object beyond trial counsel's alleged ineffectiveness.   Petitioner's ineffective assistance of trial counsel claim, however, presents a separate ground for relief that is addressed on its merits below.   In addition, Petitioner has not argued that he is actually innocent based on new, reliable evidence.   For the reasons set forth above, grounds one, three and four are procedurally defaulted, save for the one instance in ground one where Petitioner objected, and Youssef has failed to demonstrate any valid basis for excusing his default.

### IV.   Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.   *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).   The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

---

[8] In addition, this Court is bound by a state court's interpretation of state law. *See, e.g., Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003)* ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state.")

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).   However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.   By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*   A federal district court, however, may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.   Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.   "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher,* 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir. 1998)).

## A.   Ground One: Prosecutorial Misconduct

In his first ground for relief, Petitioner asserts that the prosecutor engaged in misconduct depriving him of a fair trial. (R. 1).   As discussed in the procedural default section above, the

Court will address only the portion of the claim that is not defaulted (*i.e.* the alleged misconduct that the state appellate court found Petitioner actually objected to at trial).

"The 'clearly established Federal law' relevant here is [the Supreme Court's] decision in *Darden v. Wainwright, 477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986)*, which explained that a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144." *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (*also citing Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); *see also Smith v. Phillips,* 455 U.S. 209, 219 (1982) ("The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.")   The Sixth Circuit has explained that habeas relief under § 2254(d)(1)'s unreasonableness prong, is limited to situations where "there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents," which "[b]y design" is " a hard test to pass … and it is even harder where—as in the case of the 'highly generalized' *Darden-Donnelly* standard—the relevant 'rules are more general,' leaving the state court with 'more leeway' in its 'case-by-case determinations.'" *Davis v. Johnson,* 2016 WL 5076038 at *4 (6th Cir. 2016) (internal citations omitted).   "[T]he state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley,* 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly,* 416 U.S. at 645).

Here, the state appellate court found as follows:

{¶ 22} Regarding the instance to which Youssef did object, we must determine whether the prosecutor's remarks were improper, and if so, whether the remarks prejudicially affected Youssef's substantial rights. *State v. Smith,* 14 Ohio St.3d 13,

14, 470 N .E.2d 883 (1984); *Hicks* at ¶ 30.   A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984).   The focus of that inquiry is on " 'the fairness of the trial, not on the culpability of the prosecutor.'" *State v. Bey*, 85 Ohio St.3d 487, 495, 1999–Ohio–283, 709 N.E.2d 484, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 23} Youssef asserts the prosecutor repeatedly asked M.M. questions concerning "rules" in her Arabic culture relating to having visitors over while the husband is not home and only filing for divorce in cases of adultery.   The testimony Youssef refers to, however, developed on the state's redirect of M.M. in response to questions asked by Youssef's counsel on cross-examination.   On cross-examination, defense counsel asked M.M. how she was related to Youssef, her arranged marriage, why she did not tell anyone that Youssef was raping her, and why she has not yet divorced him.   On redirect, the state asked M.M. questions to clarify her testimony on cross-examination.   As a result, this line of questioning cannot be considered to constitute prosecutorial misconduct.

*Youssef,* 2015-Ohio-766 at ¶¶ 22-24.

Further, earlier in the decision when conducting a plain error review, the state appellate court specifically noted that "throughout trial Youssef made inferences that M.M. was having an affair with Y.M. and lied about Youssef so she can be with Y.M." *Id.* at ¶17.   The state appellate court explained that the prosecution used "cultural and religious references" to explain why the victim was hesitant to report the rape, why she stayed with Youssef despite his violent behavior, and why Youssef was so upset to find another man in the victim's home without his permission. *Id.*

First, the state court, while citing Ohio cases discussing the standard for prosecutorial misconduct claims, clearly applied the correct standard.   There is simply no indication that the references to both the victim's and Petitioner's Coptic Christian Arabic culture were elicited to inflame any bias or prejudice against the Petitioner, but rather to help explain to the jury the actions of the victim, the defendant, and even some of the witnesses given within their cultural context. Furthermore, as pointed out by the state court, much of the cultural information that could be perceived as offensive were elicited by defense counsel.   On cross-examination of the victim, it

18

was Youssef's counsel that elicited the information that the victim and Youssef are cousins; that their marriage was not a "romantic or love relationship" but rather a "traditional" and "arranged" marriage; that she did not report being raped because "[i]n Arabic culture, it's not proper;" and, that Christians in Egypt "don't believe in divorce" unless adultery is involved. (R. 7-2, PageID# 255-259, 265, 310).   The state appellate court's finding—that the prosecution's questions on redirect related to issues raised by defense counsel on cross- examination and, therefore, did not amount to prosecutorial misconduct—was reasonable.   Furthermore, it is unclear how Petitioner was deprived of a fair trial by the introduction of testimony tending to show that the *reporting* of rape is taboo in the victim and defendant's culture. Such testimony, if credited, does not establish that Petitioner in fact raped his wife nor does it establish that rape is prevalent or acceptable in their culture.   Rather, Petitioner's conviction for rape was instead supported by the victim's other testimony involving detailed accounts of Petitioner's actions.   Given the substantial leeway entitled to state court determinations, the Court cannot find that the state appellate court's decision was contrary to or an unreasonable application of clearly established federal law.

**B.  Ground Two: Admission of Unauthenticated Medical Records**

In his second ground for relief, Petitioner asserts that unauthenticated medical records were admitted in violation of Ohio Rule of Evidence 803.[9]  (R. 1, PageID# 19-20).   Respondent asserts that this ground for relief presents a claim that is not cognizable upon habeas review. (R. 6, PageID# 88-89).   The Court agrees.

---

9 On direct appeal, appellate counsel argued the admission of the records merely as a matter of state law. (R. 6-1, PageID# 147-152).   Although Youssef, in his *pro se* brief before the Ohio Supreme Court, included the phrase "in violation of … United States Const. Amend[s]. 5, 14" to the second proposition of law, he did not frame his argument as one raising a federal constitutional claim. (R. 6-1, PageID# 285-287). Respondent, however, did not argue that the claim was not fairly presented as a distinct federal constitutional claim at all levels of appeal.

The state appellate court found that the records were properly authenticated under Ohio Evid. R. 901(B)(10). *Youssef,* 2015-Ohio-766 at ¶32.   "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).   Respondent is correct that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.") Federal habeas courts "do not pass upon errors in the application of state law, especially rulings regarding the admission or exclusion of evidence." *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001).   "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), cert. denied, 532 U.S. 989, 121 S. Ct. 1643, 149 L. Ed. 2d 502 (2001) (*quoting Montana v. Egelhoff*, 518 U.S. 37, 43, 135 L. Ed. 2d 361, 116 S. Ct. 2013 (1996)).   Nonetheless, the category of infractions that violate "fundamental fairness" has been defined "very narrowly." *Wright v. Dallman*, 999 F.2d 174 (6th Cir. 1993).

Further, the Sixth Circuit Court of Appeals has observed that a federal court "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes,* 397 F.3d 446, 453 (6th Cir. 2005) (*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)), *cert. denied*, 488 U.S. 1011, 102 L. Ed. 2d 790, 109 S. Ct. 799 (1989); *Bennett v. Warden, Lebanon Correctional Inst.,* 782 F.Supp.2d 466, 478 (S.D. Ohio March 15, 2011) ("[T]he state courts are the final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters.") As indicated above, the state

appellate court rejected Youssef's objection to medical records' admission, after analyzing the record and concluding such records were properly authenticated under Ohio Evid. R. 901(B)(10). *Youssef,* 2015-Ohio-766 at ¶¶30-32. The court finds no error.   However, assuming for the sake of argument only that the medical records were not properly authenticated and admitted in violation of the Ohio Rules of Evidence, Petitioner fails to cite any clearly established federal law, as determined by the United States Supreme Court, suggesting that the admission of such unauthenticated records results in a fundamentally unfair trial.   Therefore, the Court finds that the trial court's admission of the victim's medical records did not deprive him of a fundamentally fair trial and did not offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana,* 518 U.S. at 43 (*quoting Patterson v. New York,* 432 U.S. 197, 202, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)).   Petitioner's second ground should be dismissed.

**C.   Ground Five: Ineffective Assistance of Trial Counsel**

In his fifth and final ground for relief, Petitioner asserts that trial counsel rendered ineffective assistance by: (1) preventing him from testifying in his own defense; (2) failing to object to numerous cultural references by the prosecution and making several such references himself; (3) failing to make any peremptory challenges during *voir dire*; and (4) failing to arrange for Petitioner to be tested for a sexually transmitted disease (STD), which he asserts would have been negative. (R. 1, PageID# 25-26).

When addressing a claim of ineffective assistance of counsel, courts apply the familiar standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), which requires a petitioner to demonstrate both that: (1) his counsel's performance was deficient; and (2) the allegedly ineffective assistance resulted in prejudice to the petitioner.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.   First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.   Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687.   The *Strickland* standard applies "regardless of whether a [p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel."

*Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).   To establish the prejudice component of the *Strickland* standard, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Lundgren v. Mitchell,* 440 F.3d 754, 799 (6th Cir. 2006) (citations omitted).

Where the state appellate court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, its ruling must constitute an unreasonable application of the *Strickland* standard in order for the petitioner to receive habeas relief. *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted).   Because the performance and prejudice components of the *Strickland* test are mixed questions of law and fact, they are subject to *de novo* review by a habeas court. *See Carter v. Bell,* 218 F.3d 581, 591 (6th Cir. 2000). Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013); *see also Cullen v. Pinholster,* 563 U.S. 170, 131 S. Ct. 1388

(2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

Here, the state appellate court, after identifying the *Strickland* standard's two-pronged test, addressed Yousef's ineffective assistance of counsel claim as follows:

> {¶ 46} In the fifth assignment of error, Youssef argues defense counsel was ineffective for failing to: (1) explain in closing argument why Youssef did not testify; (2) use any challenges during voir dire; (3) file a motion in limine limiting references to Youssef's culture; (4) use cell phone records at trial; (5) object to the state's use of cultural references; and (6) have Youssef tested for sexually transmitted diseases.
>
> * * *
>
> {¶ 48} At trial, defense counsel argued that M.M. was having an affair with Y.M. and decided to file rape charges against Youssef in order to have a "culturally acceptable" reason to divorce Youssef.[Note 4] Youssef is now asking this court to second guess counsel's trial strategy, and we decline to do so. *State v. Grasso,* 8th Dist. Cuyahoga No. 98813, 2013-Ohio-1894, ¶ 62, *citing State v. Gooden,* 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38 ("Trial tactics and strategies do not constitute a denial of effective assistance of counsel.") Debatable trial tactics do not constitute ineffective assistance of trial counsel, for it is obvious that "'nothing is seen more clearly than with hindsight.'" *State v. Howard,* 8th Dist. Cuyahoga No. 88237, 2007-Ohio-991, ¶ 10, *quoting State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).
>
> {¶ 49} As discussed above, Youssef failed to demonstrate how the result of the proceedings would have been different. Thus, we decline to find that he was denied effective assistance of counsel.
>
> [Note 4] We note that defense counsel also argued that M.M's injuries were not serious and Youssef did not commit an assault with a deadly weapon. This argument was successful to the extent that Youssef obtained not guilty verdicts on two of the felonious assault counts.

*Youssef,* 2015-Ohio-766 at ¶¶ 46-49.

The state appellate court's decision appears to rest on its determination under the *Strickland* test's first prong, as it concluded that defense counsel's performance was a matter of

23

trial strategy and tactics which cannot be second-guessed in hindsight.   The state appellate court

also concluded, however, that Petitioner had failed to demonstrate that the result of the

proceedings would have been different.   While the state court's discussion could have been more

thorough, it did not unreasonably apply the *Strickland* standard.   With respect to Petitioner's

assertion that trial counsel prevented him from testifying and thereby prevented the jury from

hearing his side of the story, Petitioner's argument is not well taken.   Petitioner points to

counsel's closing argument wherein counsel stated:

> First and foremost , it was my decision not to have my client testify.   He wanted to.
> But for the last two days I observed what is happening here and provided that his
> command of English is zero, plus the emotional -- I thought we had enough from
> testimony that we had before to wrap this case up.   **I explained to him my
> position; I have his permission to do this**.

(R. 7-3, PageID# 881-882, Tr. 532-533) (emphasis added).   Youssef's allegation, that he was

prevented from testifying by counsel, is untenable when reading defense counsel's statement as a

whole.   Defense counsel plainly advised Youssef that he believed it was not in his best interest to

testify in his own defense, and Youssef heeded his counsel's advice.   While it was Youssef's right

to testify, he cannot demonstrate ineffective assistance by simply expressing regret at following

counsel's advice.   Youssef further alleges that his side of the story was never presented. (R. 1,

PageID# 25).   However, as noted by the state appellate court, Youssef's counsel argued at trial

that the victim was having an affair with one of the witnesses.   If Youssef had some other

important information that he believes he could have presented had he testified, he has not made

the contents of his purported testimony known to the Court.

Similarly, Youssef's general complaint that counsel failed to use any peremptory

challenges fails to establish any misconduct by counsel or ensuing prejudice.   He has not

presented any argument as to which jurors should have been struck, why they should have been

removed, or how such failure was prejudicial.   Petitioner's statement that he should have been tested for an STD, a test which he maintains would have yielded a negative result, is unsubstantiated conjecture, but ultimately immaterial.   As noted by the state court, Youssef was not charged with transmitting an STD. *Youssef, 2015-Ohio-766* at ¶20.   Furthermore, if it is Youssef's position that all sexual relations between him and his spouse, the victim, were consensual, an STD, if present in either partner, could have been transmitted on any occasion.   In other words, the presence or absence of an STD in either Youssef or the victim neither corroborates nor nullifies the occurrence of a rape.

The final objection by Youssef to counsel's performance—failing to object to numerous cultural references by the prosecution and making several such references himself— is largely repetitive of ground one.   As discussed above, it was defense counsel's theory that the victim, who was forced into a loveless and arranged marriage at a young age to a much older cousin, contrived the allegations against Petitioner as a means of escape from the marriage, and that the victim was having an affair with one of the main witnesses, Youssri Matta.   Ultimately, trial counsel's strategy failed to convince the jury.   Petitioner's theory before this Court is largely the same.   In his traverse, he alleges that his wife was having an affair with Mr. Matta.[10] (R. 19, PageID# 985).   In any event, *Strickland* cautions that "[j]udicial scrutiny of counsel's performance must be highly deferential.   It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689 ("A fair assessment of

---

[10]  The traverse also makes the unfounded allegation that defense counsel also became involved with the victim, and arranged to have both the victim and Mr. Matta treated for their alleged STDs. (R. 19, PageID# 985).

attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.")   Given both the deferential standard owed to counsel's performance as well as the state court's determination that defense counsel's actions did not constitute unreasonable trial tactics and strategy, this Court cannot conclude that the state court's decision involved an unreasonable application of clearly established federal law or that its decision was based on an unreasonable determination of the facts in light of the evidence presented.

### V.   Conclusion

For the foregoing reasons, it is recommended that Youssef's Petition be DENIED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: July 26, 2017

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.** 28 U.S.C. § 636(b)(1)**. Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, 474 U.S. 140 (1985)**, *reh'g denied*, 474 U.S. 1111 (1986)**.